## LYLES v. HASKELL.

1. COLLATERAL ATTACK—IRREGULARITIES.—On rule against a purchaser at judicial sale, he cannot attack for irregularity some prior proceedings affecting the title, under which the court had ordered a sale. He can only show jurisdictional defects apparent on the record of such proceeding.

2. PLACE OF SERVICE—PRESUMPTIONS.—Under a return by a deputy sheriff showing a service on defendant "at her residence," it will be presumed that such service was in the county of the venue, when it appears that the summons was lodged with the sheriff of that county and was served by his deputy. Such return therefore sufficiently indicates the place of service.

3. CONTINUING ACTION—SUMMONS.—After service of summons upon a defendant, she died. Within a year thereafter an order was passed continuing the action against her heirs, and giving leave to plaintiff to apply for a guardian *ad litem* for the infant heirs and take judgment by default against the adult heir, if they failed to answer within twenty days after personal service of this order upon them, which service was made. *Held*, that the action was properly continued against the heirs of the deceased defendant, and that a summons was not necessary.

4. GUARDIAN AD LITEM—ANSWER BY INFANT.—This order of continuance permitted plaintiff to "apply to this court" for the appointment of a guardian *ad litem* for the infant defendants if they failed to answer within twenty days after personal service of this order upon them. More than that time having elapsed after such service upon them and their father (it not appearing that they had any general or testamentary guardian), the plaintiff, without further notice, procured an appointment by the probate judge of a guardian *ad litem*, who answered by an attorney, the guardian not signing or verifying such answer. *Held*, that the infants were properly in court, and that the appointment of guardian was properly made, and if not, it would be a mere irregularity which was cured by the judgment, and could not avail as an objection to the title by a purchaser of the same land under subsequent proceedings.

5. ABATEMENT OF PRICE—DEFICIENCY IN ACREAGE.—Land having been sold by metes and bounds with a specified number of acres, more or less, but valuable chiefly for its granite quarries, the purchaser will not be allowed an abatement for about one-sixth deficiency in acreage, which does not include any portion of the quarries, there having been no fraud or intentional misrepresentation.

Before HUDSON, J., Fairfield, June, 1891.

This was a rule against James F. Redding, requiring him to show cause why he had not complied with his bid at a sale made in the case of Lyles *v.* Haskell. The rule was resisted upon the grounds set forth in the Circuit decree. At the hearing, the relator read an affidavit from H. Y. Milling, dated June 10, 1891, in which he stated that he was deputy sheriff of Fairfield County in August, 1882, and as such had served the summons in Kincaid *v.* Anderson on Thomas Anderson and Emma E. Anderson at their residence, and that such residence was in Fairfield County. The Circuit decree was as follows:

Under proceedings in this action, the Anderson tract of land, in the County of Fairfield, was sold by A. C. Haskell, as trustee, under decree of the court for partition. The tract was described by metes and bounds, and represented to contain twelve hundred and sixty-six and one-half acres, more or less, and to be valuable for its inexhaustible supply of beautiful granite. At this sale James F. Redding became the purchaser at and for the sum of twenty-four thousand six hundred and ten dollars. Having failed and refused to comply with the terms of his bid, a rule was issued June 11, 1891, against him, requiring him to show cause why he should not comply. To this rule return was made, and argument had thereon before me, at my chambers in Chester, on 26th June last.

The return is very full, and upon it elaborate argument was made, but I shall only notice those objections of the respondent, James F. Redding, to the marketable title to the land, which was principally relied on by his learned counsel as good cause why he should not complete the purchase. A. C. Haskell, as trustee, acquired title to this land from Wm. H. Lyles, who had purchased it at a foreclosure sale under statutory lien, at the suit of Wm. K. Ryan, as assignee of James Kincaid, against Thomas Anderson and others. James F. Redding alleges that an inspection of the record of proceedings in that action discloses defects fatal to the title of Lyles, the purchaser.

*First.* Because the land was the property of Emma E. Anderson, the wife of Thomas Anderson. They were defendants to that action, but the return of Milling, the deputy sheriff, shows that they were personally served at their place of residence, with-

out stating that residence to be in Fairfield County. This objection is not well taken. The land belonged to Emma Anderson, is situated in the County of Fairfield, was and is known as the Anderson tract. All proceedings were had in the County of Fairfield, and the service of summons was made personally by the deputy sheriff of that county. The presumption is that he acted within his jurisdiction in serving the summons on Anderson and his wife, and that their place of residence was in the County of Fairfield, and not abroad. Such, indeed, is the fact, and there is no attempt to disprove it. Anderson and wife were duly served with summons in that action, and the return sufficiently shows it.

During the pendency and progress of the action Emma E. Anderson died intestate. In due season, by order of the court, June 7th, 1883, her infant children, who resided with their father, Thomas Anderson, were made parties defendant with their father, as successors to the estate of their deceased mother. Those infants, several in number, to wit, C. Elizabeth Anderson, Edward Anderson, Emma E. Anderson, and James D. Anderson, were under the age of fourteen years. The order of the court continuing the action against the father and children as heirs at law of their deceased wife and mother was issued a few months, much less than twelve, after her death, and provided that they should each be served with a copy of said order, which was promptly done by the proper officer. They were therein required to appear and answer the complaint in the action within twenty days from the service of the order, and also were notified that if they failed to do so the plaintiff may apply to the court for the appointment of a guardian *ad litem* to answer for the said infants. No application was made by their father in their behalf, nor by any one else acting for them, to procure the appointment of a guardian *ad litem* for them, nor, of course, was any answer filed.

Accordingly, on the twenty-third day of July, 1883, upon application of the plaintiff to the Probate Court of Fairfield by petition, George H. McMaster, a good and discreet man, was appointed guardian *ad litem* of these infant defendants. The action then progressed to a final decree, the guardian having answered *pro forma*, by attorney at law, instead of in person.

No objection to the guardian *ad litem*, nor to the manner of his appointment, was, during the subsequent progress of the cause, interposed by any one on behalf of the said infants ; but the final decree of sale was made, the sale effected, and the heirs at law of Emma E. Anderson have had the full benefit thereof, and no complaint of unfairness or injustice has been heard of.

It is contended, however, by the recent purchaser, James F. Redding, that the said infants were not duly made parties to that action, inasmuch as they were not served with summons, the order of the court not being sufficient of itself to continue the action against them. We concur in the view that the order itself is probably not sufficient, and that the successors to the interest of a deceased defendant should have notice. Where more than a year has elapsed from the death of a defendant, and a supplemental complaint has to be filed, a summons to the successors is necessary, because it is as it were the beginning of a new action. Not so, however, where the order of continuance is passed shortly after death, and within the year. See *Arthur* v. *Allen*, 22 S. C., 432. But what is a summons ? It is not a process, but a mere notice, signed by the party giving it, or by his attorney. Now, surely a notice and a command issued by the court itself should be as efficacious as one issued by the party to an action. The order of court, June 7, 1883, contains all the elements of a summons and notice of application for the appointment of guardian *ad litem*, and after having been duly and personally served on the father of the children, it as effectually made them parties to the pending action as could the most formal summons have done. It gave the court complete jurisdiction of the persons of his father and his infant children, with authority to appoint a guardian *ad litem*, in case the father with whom they lived failed to make application in their behalf.

It is contended by the purchasers that such appointment under the terms of the order could have been made by the Court of Common Pleas only, and that the appointment by the judge of probate without further notice was irregular, null, and void, and left the infants unrepresented in the Court of Common Pleas and not bound by the final decree and sale of land. We do not so regard it. The appointment of a guardian *ad litem* for infant

defendants or plaintiffs in an action in the Court of Common Pleas may be made by the court or judge thereof, or a probate judge, or by a master in those counties where the office exists, and also by clerk of court in partition or foreclosure suits. To await the sitting of the court to procure the appointment of guardian would cause vexatious delays in forwarding causes. Hence, in section 136 of the Code, certain officers are named as agents of the court in the matter of the appointment of guardian *ad litem,* viz., a judge of that court, or probate judge of that county, or a master for that county, or a clerk of that court, who, during term time and especially during vacation *pro hac vice,* are the court, *i. e.,* the agents thereof.

Under the notice contained in the order of June 7, 1883, had the appointment been by the judge of the Sixth Judicial Circuit in vacation or at chambers, or by a presiding judge, as, for instance, by myself whilst on that Circuit, and twenty days after service of my order of June 7, 1883, I think it should have been lawful; but my power after leaving Fairfield, and whilst still holding the court of that Circuit, were in this respect no greater than that of the other designated agents of the Court of Common Pleas for the County of Fairfield. So I interpret sec. 136, Code, and so I think it is interpreted in *Trapier* v. *Waldo,* 16 S. C., 276. I hold, therefore, that these infants were properly before the court, were lawfully represented, and fully bound by the decree and the sale of this land in W. K. Ryan, assignee, against Thomas Anderson *et al.*

Another objection of James F. Redding, the purchaser, is that there is against Thomas Anderson, husband of Emma, an outstanding judgment at the suit of J. S. R. Thomson. It will be observed that the lien of this judgment did not attach to the interest of Thomas Anderson in this land until the moment of his wife's death, and as to said interest, it is as a judgment at that time recovered. Then and for some time previous, the action to foreclose a statutory mortgage upon the entire tract was pending, with notice of *lis pendens* on file. The lien of Thomson's judgment therefore attached subject to the prior statutory lien and junior to it. It could not affect the action, the lien, or the right of the purchaser under the decree of foreclosure and sale. Lyles

took the title as purchaser at the sale free from the encumbrance of this, Thomson's, judgment.

Lastly, an abatement in price is claimed, because there is said to be a deficiency of about two hundred acres. Where quantity enters into the essence of a contract for sale of land, and there is a material deficiency, an abatement *pro tanto* in the price will be allowed, and in all cases where deficiency in the quantity of land is so great as materially to affect its value, the purchaser will either be relieved of his bargain, or will be allowed a fair abatement of the price to be paid. In the present purchase the chief element of value in the land is in the vast quantity of superior gray granite lying beneath and upon its surface. It was sold for its quarries of granite, and bought exclusively for its supply of granite, and by men already largely engaged in this industry, now so largely on the increase. There is no evidence that the deficiency in the number of acres detracts from its value in this respect, no evidence that any resurvey has disclosed the loss to the purchaser of any bed of granite inspected by him, and no evidence therefore that he has failed to get all that he valued in the purchase. I fail to see, therefore, any valid reason why James F. Redding should not comply with the terms of sale and perfect his purchase.

It is ordered, adjudged, and decreed, that his objections to the title be overruled, his return to the rule be declared insufficient; that the rule be made absolute, and that he have thirty days from notice of the filing of this order in which to comply with the terms of his bid, and pay the costs of this rule.

Redding appealed upon the grounds stated in the opinion, and the plaintiff and others gave notice that they would urge as an additional ground in support of the judgment, that even if there were defects in the appointment of the guardian *ad litem* for the infant defendants, within the jurisdiction of the court, in the case of Ryan, assignee, *v.* Kincaid, and in the answer of such guardian, such defects were mere irregularities, and cannot be questioned in this proceeding.

*Messrs. James Simons* and *J. N. Nathans*, for appellant.

Proof of service on Mrs. Anderson was insufficient, because it failed to state the place. Code, § 159, subd. 4 ; 1 Wait Prac., 543. If the record does not show proper service on Mrs. Anderson, the action could not be continued against her heirs. Code, § 142. An action can be continued only by the service of a summons. Code, §§ 142, 148 ; Voorh. Code, 123 ; 2 Abb. Forms, 231, note t; 22 S. C., 432. The order itself did not direct its service, and therefore must be sufficient without notice, or else a summons was necessary. Nor does the return sufficiently indicate the place of service on these infants. These infants were under 14 years of age, and they and their father should have been served, he *as father* as well as in his own right. In Faust *v.* Faust (31 S. C., 576), it appeared that the infants resided with their father, and a proper notice was endorsed.

Moreover, these infants had no legally appointed guardian *ad litem.* 17 S. C., 439 ; Code, § 137, subd. 2. It is not shown that they had no general or testamentary guardian. And there was no notice of the application to the probate judge. 1 Abb. Forms, 68 ; 1 Wait Prac., 572 ; 17 S. C., 436–438 ; 23 *Id.*, 158, 187 ; 24 *Id.*, 373 ; 25 *Id.*, 275. There cannot be any presumption of notice, where the record shows that there was none. Freem. Judg., § 130 ; 2 Black Judg., 645. Irwin *v.* LeConte, 19 S. C., 554, is not in conflict with this position. See 25 S. C., 275 ; 23 *Id.*, 187 ; 22 *Id.*, 332. The answer should have been signed or verified by the guardian *ad litem.*

The abatement should be allowed for the deficiency in acreage. Redding was informed that the "titles to this property are perfect." The minuteness of description indicated that quantity was an element of value and a substantial inducement to the purchaser. 23 S. C., 208.

*Messrs. R. W. Shand* and *A. J. Green,* contra.

March 4, 1892. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. On February 6, 1888, W. H. Kerr, as the clerk of the court of Fairfield County, conveyed to William H. Lyles, his heirs and assigns forever, "all that piece, parcel, or tract of land, lying and being in the county and State

aforesaid, containing twelve hundred and sixty-six and one half (1,266½) acres, more or less, and bounded by lands of J. Davis, K. Anderson, Thomas Furman, J. A. Beard, Mrs. Watt, J. P. McFie, Thomas Robertson, Glazier Rabb, and others.'' The deed recited that the land had been sold by order of the Court of Equity in the case of William K. Ryan, assignee, *v.* Thomas Anderson and others ; of which more hereafter. On April 2, 1888, William H. Lyles conveyed the aforesaid tract of land, known as the ''Anderson Quarry Tract'' (described precisely as in the deed to Lyles from the clerk, Kerr), to A. C. Haskell and F. W. Dawson, trustees, to hold the same for the benefit of Rudolph Siegling, F. W. Dawson, A. C. Haskell, Thomas W. Woodward, and himself (Lyles), in equal one-fifth proportions.

After the death of Mr. Dawson, the said W. H. Lyles instituted this proceeding for the partition or sale of the premises, and all the parties in interest being before the court, assenting, his honor, Judge Witherspoon, on December 17, 1890, ordered the premises sold, and by agreement of the parties the sale was made by A. C. Haskell, the surviving trustee, before the court house door in Columbia, after notice of the sale, in terms as follows : ''All that tract or parcel of land in Fairfield County, known as the 'Anderson Quarry Tract' [describing it].[1] Upon the land is found granite of the finest quality and in inexhaustible quantities, one ledge rising from the creek about 75 feet in height and having an exposed area of 10 square acres, with only one or two seams through the entire body. This stone is of the very finest quality as regards appearance, durability, and the ease with which it can be worked. The titles to the property are perfect, and the opportunity will be given to a purchaser to examine into the same. Terms of sale cash, after a reasonable time for the examination of the titles to the property,'' &c.

According to this advertisement, the sale was made by Judge Haskell, the surviving trustee, in Columbia, on salesday in February, 1891, and James F. Redding was the highest and last bidder for the land at the price of $24,610 ; but he declined to comply, which declination was reported to the court. Thereupon a

---

[1] The description is the same as that contained in the first paragraph of this opinion.—REPORTER.

rule was issued against the said Redding, returnable to the court at Winnsboro, to which he made an elaborate return, declining to comply with the terms of sale upon the grounds alleged, that the title was defective and the quantity deficient. After full argument, Judge Hudson filed his decree, overruling all the objections to the title, and directing the purchaser to comply. From this decree Mr. Redding appeals to this court upon three grounds, as follows :

"*First.* Because his honor erred in not holding that the minor children of Emma E. Anderson were not bound by the decree made in the case of Ryan, assignee, *v.* Anderson and others, under which William H. Lyles purchased and held the 'Anderson Quarry Tract' of land," with four specifications, which will be considered in order.

"*Second.* Because upon a resurvey of the property contracted to be purchased, there is a deficiency of two hundred acres, which is admitted to be of the value of $1,000, and his honor erred in not holding, either that respondent is not bound to comply or is entitled to reduction *pro tanto* for said deficiency, it appearing distinctly by the advertisement under which he purchased, that the land comprised a certain number of acres, the titles to which were specially represented in said advertisement to be perfect, and under the terms of said advertisement a purchaser was entitled to expect the greatest accuracy.

*Third.* Because there is an unsatisfied mortgage on the premises contracted to be purchased by appellant as aforesaid, which is a lien thereon, viz., the mortgage made by W. H. Lyles to W. H. Kerr, C. C. C. P. for Fairfield County, and assigned to Mary C. McCarter, and his honor erred in compelling appellant to comply with the terms of sale, without making provision for the payment and satisfaction of said mortgage.

*Fourth.* Because his honor erred in requiring the respondent, appellant, to comply with the terms of sale, &c.

As to the alleged defects in the title. It is not suggested that there are any inherent defects, such as the want of a grant or of perfect chain of title, &c., but only such as are claimed to have arisen out of defective legal proceedings. and in failing to have the persons in interest properly made parties. It will be no-

ticed that no such vice is attributed to the proceedings in the case of Lyles *v.* Haskell *et al.*, under which defendant made his purchase, all proper parties being before the court, and the proceedings regular in that case. But the objections made reach further back and assail the regularity of the old case of W. K. Ryan, assignee, *v.* Thomas Anderson *et al.*, under which Mr. Lyles purchased, and which, as alleged, touch and vitiate his title as vendor. It should be mentioned, however, that these objections do not come from the parties in that case, whose title it was then the object to sell and transfer; but from a stranger to these proceedings, Mr. Redding, who afterwards happened to become the purchaser of the premises. There was an order of sale, which it is the settled policy of the State to maintain, if it can be done without violating principle or doing injustice. There was a judgment rendered by a competent court having jurisdiction of the subject-matter, and that presumes that all things were rightly done. Objections to mere irregularity in the proceedings will not be heard to impeach a judgment. Nothing, in fact, will be allowed collaterally to invalidate a title acquired under it, but jurisdictional defects which appear in the record. In the case of Ryan *v.* Anderson, the court certainly had jurisdiction of the subject-matter, and the only question is, whether it acquired jurisdiction of the parties, and that must be determined by the record itself.

It appears that on August 9, 1882, the action was commenced, that at that time the premises were owned by Mrs. Emma E. Anderson, the wife of Thomas Anderson; that the proceeding was instituted in Fairfield County to foreclose a statutory mortgage, and that both Mrs. Anderson and her husband were necessary parties, and the complaint prays against them (among others). Summons was issued and lodged in the office of the sheriff of Fairfield County, with the sworn return that she and the other defendants had been served "at their respective residences on August 10, *1882*," and one Milling made affidavit that Thomas Anderson and his wife, Emma E., "resided in Fairfield County" at the time said summons was served. After the said service of summons, but before she answered, Mrs. Anderson died, and James H. Rion, Esq., within a year, made affidavit of her death,

and Judge Hudson made the following order: "On hearing the annexed affidavit of James H. Rion, plaintiff's attorney, and with the consent of the attorneys of such of the defendants as have appeared and answered herein, it is ordered, I. That this action be continued against Thomas Anderson, Edward Anderson, Emma E. Anderson, C. Elizabeth Anderson, and James D. Anderson, as heirs at law of the defendant, Emma E. Anderson, deceased. II. That the said Thomas Anderson, C. Elizabeth Anderson, Edward Anderson, Emma E. Anderson, and James D. Anderson do appear and answer the complaint herein within twenty days after a service of a copy of this order upon them. III. That in default thereof the plaintiff may apply to this court for an order appointing a guardian *ad litem* for the infants, C. Elizabeth Anderson, Edward Anderson, Emma E. Anderson, and James D. Anderson, and directing such guardian *ad litem* to appear and answer this action on their behalf, and may have judgment for failure to answer against the defendant, Thomas Anderson," &c.

Copy of this order was served on Thomas Anderson and each of his four minor children on June 14, 1883, as returned "at their residence in Fairfield County." James H. Rion, attorney, petitioned J. R. Boyles, Esq., judge of probate of Fairfield County, stating that the four children of Mrs. Anderson, deceased (naming them), were infants under 14 years, to appoint George H. McMaster their guardian *ad litem*, which was done, and the said guardian employed a lawyer, J. W. Hanahan, Esq., who appeared and answered for them. After the issues were thus made up, Judge Witherspoon referred it to J. E. McDonald, Esq., as special referee, to report the testimony and report on the truth of the statements in the pleadings. The report was filed, and Judge Fraser, on September 21, 1883, after reciting that all the parties were properly before the court, made a decree of foreclosure, directing the premises sold, and the sale was made, at which the premises were purchased by W. H. Lyles, the vendor. Under these circumstances, were the order of sale made by Judge Fraser in the case of William K. Ryan, assignee, *v.* Thomas Anderson, and the sale and conveyance thereunder void, in whole or in part?

26—35

(A) The first specification under the first ground of appeal alleges that Mrs. E. E. Anderson, the mother, was not properly made a party, in that the proof of service of the summons does not show *where* service was made upon her; and therefore the action could not lawfully be continued against her children and heirs at law. The return of the sheriff stated that Mrs. Anderson was served "at her residence," but did not state that it was in "Fairfield County." Section 159 of the Code requires that the affidavit must state "the time and *place* of service." This direction has been held to be satisfied by a statement that the service was made in a specified county of the State. 1 Wait Prac., 543. The "county" was not stated here, but the whole record showed that it was Fairfield County. The land was in Fairfield County, the action was brought in Fairfield County, the summons lodged in the sheriff's office of Fairfield County, and served by the deputy sheriff of Fairfield County, and the presumption is overwhelming that he acted within his jurisdiction. We agree with the presiding judge, that Mrs. E. E. Anderson, the mother, was duly served with summons in "Fairfield County," and that the court had acquired jurisdiction of her person before her death.

(B) The second specification complains that even if Mrs. Anderson was properly served, the service of the order continuing the action, even if properly made on the minor children, and so shown by the record, is not sufficient to continue the action, but the same should have been continued under the order by the service of a summons. Section 142 of the Code provides "that no case shall abate by the death, marriage, or disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue. In case of death, marriage, or other disability of a party, the court, on motion at any time within one year thereafter, or afterwards on a supplemental complaint, may allow the action to be continued by or against his representative or successor in interest," &c. This was done within a year by Judge Hudson's order of June 7, 1883, and a copy of the same was served on each of the heirs, with a notice that if they did not within 20 days appear and answer the complaint, the plaintiff might apply to this court for an order appointing a

guardian *ad litem* for the infants, &c.   It is contended, however, that a summons was indispensable.   We find no express requirement that in a case continued by order, there must be also a summons; and as the order served contained substantially all the elements of a summons, we cannot say that the absence of a formal summons was a jurisdictional defect.   See *Arthur* v. *Allen*, 22 S. C., 432.

(C) The third specification denies that the continuing order of Judge Hudson was legally served on the heirs of Mrs. Anderson, for the reason that the return of service by Milling, D. S., was "served by delivering to them (naming them) personally and by leaving with them copies at their residence in Fairfield County."   We have already held that a return of service on a certain day "in the County of Fairfield" satisfied the requirements of the Code as to place.   The heirs of Mrs. Anderson were made regular parties by continuance after her death.

(D) The fourth specification insists that even if the infants were made parties, they were not represented in the case by a legally appointed guardian *ad litem*, for by the terms of the continuing order, "it was expressly declared that on failure of said parties to answer, the plaintiff should have leave to apply *to this court*—meaning the Court of Common Pleas—for the appointment of a guardian *ad litem;* and the record not only shows that there was no notice to said infants, or to any one on their behalf, of the proposed application for the appointment of a guardian *ad litem*, but shows that the application was actually made to, and the appointment by, the judge of probate without any notice, and the answer put in by the guardian *ad litem* so appointed, is not signed or verified by him."

When an infant has been made a party, he can only appear by guardian *ad litem*, appointed as follows: if he is a defendant and under the age of 14 years, or neglects to apply within 20 days after service of the summons, then upon the application of any other party to the action or of a relative or friend of the infant, after notice of such application being first given to the general or testamentary guardian of such infant, if he has one; if he has none, to the person with whom such infant resides.   See subdivision 2, section 137, of the Code.   There is not even a sugges-

tion that these infants had a general or testamentary guardian; and we think that notice to them and their father, with whom they resided, to appear and answer the complaint, was substantially a notice that they should have a guardian *ad litem* to enable them to do so, and in default thereof that the plaintiff would proceed to have a guardian appointed, and was a sufficient notice. *Faust* v. *Faust*, 31 S. C., 576.

It is, however, still further contended, that under the terms of the continuing order, the appointment of a guardian *ad litem* could only be made legally in the Court of Common Pleas. If there was a mistake in reference to this matter, it could be nothing more than a mere irregularity, which was cured by the judgment; but section 136 of the Code expressly declares that a guardian *ad litem* may be appointed by the court in which the action is prosecuted, or by a judge thereof, or by a probate judge, &c. *Trapier* v. *Waldo*, 16 S. C., 276; *Faust* v. *Faust*, 31 *Id.*, 576; *In re Loney*, 134 U. S., 374. There was no surprise to the infants; they had their day in court, they derived full benefit from the proceedings, and they are not here making complaint. We agree with the Circuit Judge that they were legally represented, and are bound by the decree and the sale of the premises in the case of W. K. Ryan, assignee, *v.* Thomas Anderson *et al.*

*Second.* As to the deficiency in the number of acres. Upon this subject the Circuit Judge said: "An abatement in price is claimed, because there is said to be a deficiency of about two hundred acres. Where quantity enters into the essence of a contract for the sale of land, and there is a material deficiency, an abatement *pro tanto* in the price will be allowed, and in all cases when the deficiency in the quantity of land is so great as materially to affect its value, the purchaser will either be relieved of his bargain or will be allowed a fair abatement of the price to be paid. In the present purchase the chief value of the land is the vast quantity of superior gray granite lying beneath and upon its surface. It was sold for its quarries of granite, and bought exclusively for its supply of granite, and by men already largely engaged in this industry, now so largely on the increase. There is no evidence that the deficien-

cy in the number of acres detracts from its value in this respect; no evidence that any resurvey has disclosed the loss to the purchaser of any bed of granite inspected by him, and no evidence, therefore, that he has failed to get all that he valued in the purchase. I fail to see, therefore, any valid reason why James F. Redding should not comply with the terms of sale and perfect his purchase." We agree with this clear condensation of the law upon the subject, and think it unnecessary to enter into a review of the cases. The sale was not by the acre, but of a certain tract of land known as the "Anderson Quarry Tract," and the number of acres was mentioned as a part of the description of the land. There was no pretence of fraud or intentional misrepresentation. See *Mitchell* v. *Pinckney*, 13 S. C., 210; *Thompson* v. *Wofford*, *Ibid.*, 219; *Douthit* v. *Hipp*, 23 *Id.*, 208; and *Peden* v. *Owens*, Rice Ch., 56.

*Third.* As to the unpaid mortgage owned by Mary C. McCarter. It was stated at the bar, that the decree of Judge Witherspoon ordered this mortgage paid, and there was no appeal. We have not been able to find the decree of Judge Witherspoon in the "Brief," but it is admitted that the mortgage debt must be paid, and it is so ordered, by consent of the parties.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.