## McMASTER v. ARTHUR. ·

1. The widow and minor children of a deceased debtor are entitled to a homestead out of his estate as against his debts; and a decree by default against the widow and children, adjudging a sale of all the lands of the deceased debtor to pay his debts, is not a bar to a subsequent proceeding by them before sale is made to obtain such homestead in the mode prescribed by law.

2. Where the master announces that a sale will be made subject to a claim of homestead, when no such provision is contained in the order of sale, he thereby adds to the terms of sale and renders the sale void, and the purchaser, the homestead claimant, is not bound to comply. MR. JUSTICE McIVER, *dissenting.*

3. A decree for the sale of land may be regarded as technical "process," and the spirit and intent of the law will justify an application to the master, to whom such decree of sale is directed, to set off homestead in the lands so ordered to be sold; and it will then become his duty to have such homestead admeasured. MR. JUSTICE McIVER, *dissenting,* so far as a decree for sale is held to be "process."

4. Where an attorney bids in land at a judicial sale and has the bid charged to himself "as attorney," and the selling officer, knowing for whom the attorney is acting, accepts the bid as made, no rule should issue against the attorney personally for his failure to comply.

Before ALDRICH, J., Richland, March, 1889.

The opinion fully states the case.

*Mr. B. L. Abney*, for appellant.

*Mr. Andrew Crawford*, contra.

November 27, 1890. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. One Stephen W. McKenzie, late of Richland County, died in 1887, testate, leaving a widow, Harriet McKenzie, the defendant, and two minor daughters. His estate consisted of a small amount of personal property, and two small houses and two lots of land situate in the city of Columbia. The widow declined to take under the will, and the estate of the deceased being indebted, a proceeding was instituted in the Court of Common Pleas, in the nature of a creditors' bill, against

the defendant Arthur as administrator with the will annexed, and the said widow and children of the deceased, wherein John McMaster was plaintiff, who established a claim of $35 against said estate, and an order was obtained directing the master to sell the premises described in the complaint for cash, the proceeds to be held subject to the further order of the court.

Before the sale, Mrs. McKenzie moved the court on notice for an order to open this judgment and for leave to file an answer for the purpose of setting up a right of homestead in the lands of her deceased husband, for the settlement of whose estate the proceedings above mentioned had been instituted. This motion was refused by his honor, Judge Fraser, presiding, who held that Mrs. McKenzie not having answered to the proceedings above, although the summons in the case had been duly served upon her, it was now too late for her to come in. He further said that he did not think that the right of homestead in its integrity was necessarily involved in the proceeding to settle the estate, and that where no process had been lodged, proceedings should be had under section 2002, General Statutes.

Thereupon Mrs. McKenzie filed a petition before the master for a homestead. This petition does not seem to have been acted upon by the master, and on the day upon which the land was ordered to be sold the master offered it for sale, when Mr. Crawford, the attorney of the petitioner, gave notice of the claim of his client, whereupon the master announced that the land would be sold subject to the claim of homestead and proceeded with the sale, when Mr. Crawford, as attorney for Mrs. McKenzie, bid off the land at the price of $280, who failing to comply, a rule was issued against him why he should not be attached for contempt. Mr. Crawford answered the rule, enlarging therein the facts as above, upon the hearing of which his honor, Judge Aldrich, deeming the return satisfactory, discharged the same.

The appeal is from this order, and it is based upon four exceptions, of which the following are copies:

"I. Because the return only set up as a ground for discharge that Harriet McKenzie, a party to said suit, was entitled to a homestead in the lands sold, whereas she was effectually barred and concluded from claiming homestead as against John McMas-

33—33

ter, in the lands sold, by reason of the decree or judgment made or
rendered in the case of McMaster *v.* Arthur, admr., &c., *et al.*,
and her children were likewise concluded by reason of the matters and things therein found and determined.

"2. Because even if Harriet McKenzie and her children were
entitled to homestead, she could not claim it out of the proceeds
of sale, and the respondent was bound to pay the amount of his
bid in, which was subject to the plaintiff's claim, as said bid was
over and above the homestead, and was made subject to any homestead right.

"3. Because the return was insufficient in setting up that the
master should have set off homestead, inasmuch as the master
had no jurisdiction under section 2002 of General Statutes to
set off homestead, as process had been issued in said action to sell
the said land.

"4. Because the judge erred in awarding costs against the
plaintiff to the respondent."

We are not aware of any law which could be invoked in support of the first exception. The widow and children of a deceased
debtor are entitled to claim a homestead in the lands of the deceased husband and father, where he could have claimed it in his
life time. Now, there can be no doubt that had Stephen McKenzie
been sued on the claim of plaintiff in his life-time, and judgment
had been obtained thereon, this would not have deprived him of
the right to claim a homestead; on the contrary, this would have
presented the very state of facts upon which his claim would have
been enforced. True, the judgment here was not obtained in
the life-time of the debtor, Stephen McKenzie, but it was obtained on a debt of his after his death, in a proceeding for the
settlement of his estate against his administrator and heirs at
law, John McMaster being the plaintiff. The debt claimed was
a valid debt, and there was no defence thereto set up, nor could
there have been; but it seems to us that instead of its existence
defeating the homestead, it furnished the reason why it should
be claimed.

Nor do we think that the widow and children were required to
claim it in that proceeding. That was a proceeding in the Court
of Common Pleas, which court was without full jurisdiction as to

homesteads, the general assembly having provided statutory proceedings in such cases other than such as can be furnished by the Court of Common Pleas, and which this court has several times held must as a general rule be followed. *Norton* v. *Bradham*, 21 S. C., 384; *Ex parte Strobel*, 2 S. C., 309. Such being the fact, we do not think that the failure of the widow and children to set up their claim in that proceeding, nor their silence, nor their seeming acquiescence in the order of sale, should shut off the claim now endeavored to be enforced in the mode provided by the statute, as they supposed.

As to the 2nd exception, we do not understand that Mrs. McKenzie is claiming a homestead out of the proceeds of the land, but she is claiming it out of the land itself. Her position is that the judgment had no lien, and that the sale thereunder was illegal; that she bought nothing, and therefore is not bound to pay her bid. We think the sale by the master was illegal, for a different reason from that given by the petitioner. The master supplemented the order of the court by a condition not found in said order, to wit, that the land should be sold subject to the claim of the homestead. This addition to the order was made by the master on the day of sale, when Mr. Crawford, as attorney of the petitioner, gave notice of this claim; but by what authority could the master thus supplement said order? We know of none; and even admitting for this case, that had the order been carried out according to its terms, that the result might have been different, yet said order not having been executed, the matter stands as if there had been no sale. It was a void sale, the master having no authority to sell as he did (*Bailey* v. *Bailey*, 9 Rich. Eq., 395), and consequently the petitioner was not bound to pay in her bid.

As to the third exception. There is no doubt but that the widow and children of the deceased debtor are entitled to a homestead out of his lands (section 1997, Gen. Stat.); and notwithstanding the fact that the decree ordering the sale may be regarded as "process" technically, yet the purpose of the act being to secure such homestead to such claimants, we think the spirit and intent of the act would sanction the application here; and that the master should have set off the homestead before proceeding

with the sale. He was an officer holding a process for sale, and under the act in such cases he was bound to set off the homestead before selling. Sections 1994 and 1997, General Statutes.

The 4th exception is as to the costs. Appellant submitted no argument upon this point; we suppose therefore that it was abandoned. We may say, however, that we see no error as to that matter.

The appeal has been considered as if the rule had been served upon Mrs. McKenzie, the real bidder at the sale in question. But if the case is to be regarded as one against Mr. Crawford personally, it clearly appears that he was not bidding for himself, but was bidding as attorney for Mrs. McKenzie, which was known to the master, and his bid being accepted as such, he would not be amenable to a rule. So in any event we think that the discharge of the rule was proper.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed. Let the case be remanded, with the right of the petitioner to have the homestead set off by the master or other officer holding process, and should there be an excess of land over and above the homestead, said excess to be sold under such order as may be deemed necessary, for the benefit of appellant and such other creditors as may be entitled thereto.

Mr. Justice McGowan, concurring. In the case of *Munro v. Jeter* (24 S. C., 29), it was held that the *right* to homestead may be decided in an action to marshal assets to which the claimant is a party; but it was not held that it *must* be then decided, on pain of being *estopped by res adjudicata.* Then could the sheriff properly sell lands known to be subject to a claim of homestead? He clearly could not, if his authority to sell were final process—as an execution. Is he bound to do so, when his authority to sell is a simple order to sell? I can see no substantial difference, unless the order to sell presupposes the question of homestead already adjudged, which in this case is negatived by Judge Fraser's order.

Mr. Justice McIver, *dissenting.* This case is presented under a somewhat peculiar aspect. The main object of the action

seems to have been to sell the lands of the testator, Stephen W. McKenzie, for the payment of his debts, his personal estate being insufficient for that purpose, and to the action his heirs at law and devisees, of whom his widow, Harriet E. McKenzie, was one, were duly and properly made parties. There was no exception to, or appeal from, the order directing the master to sell the real estate for the purpose indicated, and no claim of homestead was set up in said action, either by answer or otherwise. But after the sale had been ordered and the property advertised, the widow, Harriet, filed her petition, addressed to the master, I presume, though it is not so distinctly stated in the "Case," praying that a homestead should be set off to her and her minor children.

Under this petition no steps appear to have been taken, and no effort made in any proper form, to require the master to proceed to have the homestead set off. On the contrary, the master exposed the property for sale at the time directed by the order, and after the advertisement had been read, and before any bid had been made, Andrew Crawford, Esq., as the attorney of the widow and her minor children, formally gave notice of their claim of homestead, and that he had instituted proceedings in the master's office to obtain same. Thereupon the master announced that all persons would bid subject to such claim. The sale then proceeded and the property was bid off by Mr. Crawford, who announced the bidder to be "Andrew Crawford, attorney." The bidder declining to comply, a rule was taken out, requiring Andrew Crawford, Esq., to show cause why he should not be attached for a contempt in refusing to comply with the terms of the sale. To this rule a return was made, sworn to by Harriet E. McKenzie, in which she assumes the responsibility for the bid of Mr. Crawford, if any, stating that he was acting throughout as her agent and representative, and after setting forth, amongst other things, the facts above stated, claimed that the course pursued by the master was illegal, and that she was not bound to comply with the bid made by her attorney.

It seems that after the order of sale was made as above stated, Harriet E. McKenzie moved before his honor, Judge Fraser, for an order to open the judgment and for leave to file an answer setting up the claim of homestead. This motion was refused, but

in refusing the motion, Judge Fraser said that he was inclined to the opinion that the right of homestead was not necessarily involved in the action, and that where no process has been lodged against the debtor, proceedings to obtain the homestead should be taken under section 2002 of the General Statutes. From the order refusing the motion to open the judgment no appeal was taken, but Harriet E. McKenzie, acting on the intimation of Judge Fraser, filed the petition in the master's office above referred to.

The case below as well as here seems to have been treated as practically a rule against Harriet E. McKenzie, the real bidder; and the Circuit Judge discharged the rule upon the ground stated in the "Case," and from this order discharging the rule the plaintiff appeals upon the several grounds set out in the record, as well as in the opinion prepared by the Chief Justice, and which need not therefore be repeated here.

The first ground raises the question as to the effect of the failure of the parties claiming to be entitled to a homestead to set up such claim in the action, the object of which was to sell the real estate of the debtor, Stephen W. McKenzie. In the decision of this question I must confess to a feeling of no little embarrassment. While it is well settled that the Court of Common Pleas had no jurisdiction to admeasure or lay off a homestead, but the same must be sought in the modes prescribed by the statute (*Ex parte Lewie*, 17 S. C., 153; *Myers* v. *Ham*, 20 *Id.*, 522), yet it is equally well settled that where, in the course of some proceeding properly before that court, it becomes necessary to adjudicate *the right* of homestead, it has full power to make such adjudication, leaving the party in whose favor such right is adjudged to enforce the same by a proper proceeding before the appropriate tribunal in the mode prescribed by statute. *Munro* v. *Jeter*, 24 S. C., 29; *Swandale* v. *Swandale*, 25 *Id.*, 389; *Bridgers* v. *Howell*, 27 *Id.*, 425. Now, in this case it does seem that before any order for the sale of the land could properly have been made, the alleged right of homestead therein should have been adjudicated. All the proper parties necessary for that purpose were before the court, and that, as it would seem, was the proper time to adjudge the question. But no such question was

then brought to the attention of the court, and, of course, it proceeded to order the sale without regard to the alleged right of homestead. Certainly if the claim of homestead had then been set up and denied, and there had been no appeal, the claim could not afterwards have been successfully asserted.

Now, if the claim was not set up when it ought to have been, the proper parties for the purpose being before the court, it would seem that it ought to stand upon the same footing as if it had been set up and rejected. The court could not render the judgment sought to be obtained, to wit, a sale of the land, properly, without first determining the right of homestead, for it had no right to sell land for the payment of debts in derogation of the right of homestead; but as the parties entitled to such right did not see fit to set it up, and as the court could not undertake to determine a right not set up, it would seem that the judgment for the sale of the land amounted practically to a denial of the right, and that it is too late now to set it up. It is true that the case of *Ex parte Strobel* (2 S. C., 309) decides otherwise, but the point seems to have received but little consideration in that case, and since the decisions above cited, where, as in *Munro* v. *Jeter*, it is said that in marshalling assets it may become necessary to decide the question of homestead, it seems to me that Strobel's case should be reviewed. Until, however, that decision is overruled, I am bound by it, and I yield to it as authority.

Assuming, then, as I am bound by authority to do, that the right of homestead was not barred or adjudged adversely to the claimants by the failure to set it up in the action which culminated in an order for the sale of the land, I do not see how this right of homestead affords any legal excuse for a failure to comply with the bid. Harriet E. McKenzie must be regarded as bidding voluntarily on land in which she knew she had a claim of homestead. She was not deceived or misled in any way. On the contrary, the officer conducting the sale explicitly declared that the purchaser would buy subject to the claim of homestead, and yet in the face of such a declaration, and, of course, with full knowledge that she had instituted proceedings to obtain a homestead in that very land, she, through her accredited agent, voluntarily bid off the land, and it seems to me that she is bound to

comply, for the necessary inference is that she estimated the land to be worth the amount of her bid over and above the homestead. It is like the case of a person bidding off land subject to a prior mortgage of which he has full notice, where the amount of the bid is always regarded as the purchaser's estimate of the value of the property over and above the encumbrance.

It may be possible that Harriet E. McKenzie had good cause of complaint against the master for not proceeding to lay off her homestead before making the sale (as to which, however, I express no opinion); but that is not a matter before us, and so far as I can see has nothing whatever to do with the present inquiry. The simple question presented for our determination is whether she shall be required to comply with her bid, made with her eyes open, and with full knowledge of all the circumstances; and I am unable to discover any reason why she should be excused from compliance. If she saw fit to buy land, which, as alleged in her return to the rule, is not worth as much as the exemption allowed, in which she had a valid claim of homestead, that was her own folly, and she must take the consequences.

It is said, however, that she cannot be required to comply with her bid, because the sale was rendered void by the declaration of the master that "all persons would bid and buy subject to the claim of homestead," which, it is claimed, was an unauthorized addition to the terms of the sale as prescribed by the court. I cannot so regard it. After notice had been given by the attorney representing the claimants that he had instituted proceedings to obtain a homestead in the land offered for sale, the master simply stated as a fact, what every one must have known, that the purchaser would buy subject to such claim. How this can be construed as an alteration of the *terms of the sale*, I am unable to conceive. But even if it could be so construed, then there was no alteration of the terms of the sale, for undoubtedly the court could not order a sale of land for the payment of debts, except subject to any claim of homestead that might be made therein; and this court certainly would not assume that the Circuit Court had done what it had no power to do.

Again, it seems to me to be a mistake to treat this as a case of the sale of land under final process. As I understand it, the

homestead laws make two distinct and different provisions in regard to the mode of obtaining the exemption allowed, one applying to cases where the sheriff or other like officer, for instance, the coroner or a constable, has a mandate in his hands, in the shape of mesne or final *process*, requiring him to sell property for the payment of debt, the other to cases where no such process has been lodged with the sheriff or other like officer; and the modes of proceeding in the two cases are entirely different. In the former cases the sheriff or other like officer is required to cause three appraisers to be appointed, and proceed as is directed in section 1994 of the General Statutes; but in the latter cases the proceeding is by petition on behalf of the claimants, addressed to the master, or to the clerk of the court, if there be no master, who is required to proceed as directed in section 2002 of the General Statutes. It is true that in section 1994 the language is, that "the sheriff or other officer"—and not the sheriff or other *like* officer—shall, before selling under any mesne or final process, proceed as is directed in that section; but the terms of section 2003 show that the provisions of section 1994 are confined to sheriffs and other *like* officers, and do not embrace masters or clerks of court, for the language is, "No sheriff, constable, or other officer, *whose duty it is to enforce executions*, shall proceed," &c., and the words which I have italicized plainly indicate what classes of officers are referred to.

Now, in this case it does not appear that any judgment had ever been recovered against Stephen W. McKenzie, and, of course, no final process had ever been lodged with the sheriff or other like officer, and hence the only appropriate proceedings on the part of the homestead claimant was a petition to the master. That officer had no authority to proceed to have the homestead laid off in the manner which a sheriff would have been required to do, who had in his hands final process to enforce the payment of a debt; for he is not an officer whose duty it is to enforce executions, and he had in his hands no execution. The order of court under which he was acting can in no proper sense be regarded as final *process*. He was simply an agent or officer of the court entrusted with the duty of carrying out its instructions, one of which was to sell certain real estate for the purpose of

enabling the court to administer the assets of the deceased.    The court itself had ordered him to sell certain specific real estate, and I do not see by what authority he could have undertaken to disregard that order and proceed to lay off a homestead in such real estate in the manner prescribed for a sheriff to proceed before selling any property of a judgment debtor under final process lodged with him for the enforcement of the payment of a debt.

For these reasons I am unable to concur in the conclusion reached by a majority of the court.

Judgment affirmed.