## No. 10603.

### BRADLEY *ET AL.* v. CALHOUN

#### (106 S. E. 843)

1. JUDGMENT—RECORD OF DECREES CONCERNING DISPOSITION OF LAND HELD ADMISSIBLE IN ACTION FOR PARTITION.—In an action for partition of land by persons claiming under a will as remaindermen, the court did not err in admitting in evidence, for what they were worth, equity records of decrees concerning the land in so far as the tract of land, the subject of the controversy, was concerned, but, after they were admitted in evidence, the court should have submitted the question as to whether plaintiffs were parties or not to the proceedings in which such decrees were entered.

2. JUDGMENT—NO ONE BOUND UNLESS CITED TO APPEAR AND AFFORDED OPPORTUNITY TO BE HEARD; "DAY IN COURT."—No one shall be personally bound by a decree until he has had his day in court; that is, he must be cited to appear and afforded an opportunity to be heard.

3. JUDGMENT—VOID JUDGMENT SUBJECT TO COLLATERAL ATTACK, BUT NOT VOIDABLE JUDGMENT.—If a decree is void and the parties not served, there is a fatal defect without proof, but, if a decree is voidable and there is a hidden infirmity which can only appear by proof, the infirmity cannot be shown in a collateral manner, but only by a direct proceeding instituted for that purpose.

4. JUDGMENT—DECREE PUTTING FEE IN LIFE TENANT NOT BINDING ON REMAINDERMEN NOT PARTIES TO PROCEEDINGS.—A decree of a chancellor simply putting the fee in the life tenant, thus destroying the purpose of a will, was an absolutely void act, where remaindermen were not before the court in the proceeding by person, privies, or class, or some competent person to represent them.

5. EXECUTORS AND ADMINISTRATORS—ALL PERSONS IN ESSE NECESSARY PARTIES IN PROCEEDINGS TO SELL LAND.—In proceeding to sell land left to life tenant and remaindermen, all persons in esse who have any special interest in the property, without reference to what may be the precise character of that interest, should be made parties.

6. EXECUTORS AND ADMINISTRATORS—ONE PURCHASING LAND SOLD AS ABSOLUTE ESTATE OF DECEDENT ACQUIRED ONLY SUCH TITLE AS HE HAD.—One purchasing land sold in probate proceeding as the absolute estate of a decedent acquired only such title as such decedent had, where such person had notice that decedent was only entitled to a life estate and was only legally holding the land as trustee for remaindermen.

Before BOWMAN, J., Allendale, February term, 1920. Reversed.

Action by J. R. Bradley and others against Belle Bradley Calhoun. From a directed verdict for defendant the plaintiffs appeal.

*Messrs. Hendersons; Brown & Bush and Harley & Blatt,* for appellants, cite: *Purchaser at Judicial Sale must make inquiry as to jurisdiction of Court and whether parties were before it*: 16 S. C. 281, 282; 37 S. C. 77. *And is charged with notice of all records in the Court, and all defects that appeared in those records*: 14 S. C. 312; 12 S. C. 142. *Contingent remaindermen in esse necessary parties*: 22 S. C. 329; 25 S. C. 39; 23 S. C. 502. *Where party receives benefits Court will presume she was before Court and bound by its proceedings*: 4 Rich. Eq. 157. *Parties must be mentioned in record in order for presumption that they were before the Court to arise*: 77 S. C. 393; 59 S. C. ; 112 S. C. 425. *Judgment against a party not named in complaint or any other part of record is void*: Freeman Judgments (2nd Ed.) Sec. 141: 1 Black Judgments. Sec. 116; 2 N. & McC. L. 26; 18 Wall 366; *Courts will carefully guard the integrity of trusts*: 112 S. C. 284; 99 S. E. 804. *All persons in esse who have a special interest in the subject matter should be made parties*: 23 S. C. 516. *Power of sale can only be executed in mode and manner prescribed*: Perry Trusts, 31 S. C. 198. *Inglis decree, omitting the words "his heirs forever" created only a life estate*: 102 S. C. 367; 87 S. C. 298. *Party pleading estoppel by judgment has burden of proof on him*: Wells on Res Adjudicata, Sec. 215, 216. *What was actually adjudicated may be established by parol*: Cheves Law 254; 34 S. C. 287. *Estoppel applies only to what was adjudicated; not what might have been*: 77 S. C. 490; 19 S. C. 158. *If Probate Court did pass on title which it had no power to do, it is not res adjudicata*: 24 S. C. 410; 18 How. 497. *Before defendant can*

*show ouster against her stepchildren she must show unequivocal notice of her intention so to claim*: 112 S. C. 2; 77 S. C. 139; 88 S. C. 101.

*In reply: Harleys were not representatives of class in common with Bradley children*: 15 Enc. P. & P., 630-3; 30 Cyc. 136; 22 S. C. 331; 84 S C. 30.

*Messrs. Holman & Boulware,* for respondent, cite: *Sale under Probate proceeding is bar to appellant's claim, and if voidable, is not subject to collateral attack*: 5 Rich. L. 107; 24 S. C. 90; 24 S. C. 398; 95 S. C. 77; 24 S. C. 407; 112 S. C. 426; 100 S. E. 169; 90 S. C. 532; 54 S. C. 90. *Title in third person may be shown under general denial*: 52 S. E. 967. *Presumption of regularity in old equity record*: Rice 232; 4 Rich. Eq. 152; 112 S. C. 426; 106 S. C. 492; 60 S. E. 706; 58 S. E. 2; 38 S. E. 209; 25 S. E. 74; 9 L. Ed. 490; 62 S. E. 948 (Va.;) 79 A. S. R. 352. *Remaindermen in esse represent class*: 61 S. E. 218; 56 S. E. 677. *Executors represented remaindermen*: 23 S. E. 503; 25 S. C. 35; 31 S. C. 91; 44 S. E. 737; 58 S. E. 945; 99 S. E. 801. *Purpose of suit in 1861 was to obtain equitable relief*: 4 Rich. L. 510; 34 S. C. 462; 90 S. C. 532. *Change in character of possession*: 2 Bail. L. 605. *Actual notice not necessary to constitute ouster*: 26 S. E. 657. *Recording deed as notice*: 61 S. C. 289; 26 S. E. 1; 11 L. Ed. 778.

• April 13, 1921.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an action for partition of what is generally known as the John W. Bradley home place; said place contains 148 acres or 153 acres. Appellants contend that they are the children and grandchildren of John W. Bradley, deceased, and as such are entitled to seven-eighths undivided interest in said land, under the will of William Cave. They concede

one-eighth undivided interest is in the respondent, who was the only daughter of said John W. Bradley, by a second wife, Julia R. Bradley.

The answer of the respondent denied title in the appellants and claims absolute title in herself as sole heir at law of Julia R. Bradley, the second wife of John W. Bradley; it being contended that the said Julia R. Bradley acquired title to said tract of land by sale by the Probate Judge of Barnwell County in the year 1877 under proceedings instituted to sell said property of John W. Bradley for payment of his debts. Respondent also sets up proceeding, under which it is claimed said sale·took place and the deed of Probate Judge to Julia R. Bradley as res adjudicata of the question of title which is at issue in this section, and a further plea of res adjudicata, of said title under certain proceedings in the old Court of Equity, and also sets up statute of limitations, presumpton of a grant and adverse possession and a general denial.

Appellants claim title to land in dispute under the will of William Cave, dated May 11, 1849, and probated in the county of Barnwell November 16, 1855. The cause was tried before Judge Bowman and a jury at February term, 1920, and he directed a verdict for the defendant. Plaintiffs appeal, and by six exceptions allege error. Exceptions 1, 2, 3, and 4 will be considered together. They complain of error on the part of his Honor in admitting in evidence the alleged equity records, because it appears affirmatively in said records there was nothing to show that the plaintiffs were ever parties to that proceeding, and there is nothing to show in any paper produced in these records that their names were ever mentioned. The records not even mentioning the remaindermen by name, and there is nothing therein by which it could be presumed that they were parties to that suit.

We do not see any error on the part of his Honor in admitting in evidence for what it was worth the record, in so far as the tract of land, the subject of this controversy, is concerned. But after they were admitted in evidence his Honor should have submitted the question as to whether they were parties or not to these proceedings; for if they were not parties, then the decree of Chancellor Johnstone and Chancellor Inglis did not preclude them from asserting their rights as remaindermen under the will of William Cave. No one shall be personally bound until he has had his day in Court; he must be cited to appear and afforded the opportunity to be heard.

"A judgment against a party not named in the complaint nor any part of the record is void. We cannot presume that one who does not appear to have been a party had his day in Court." Freeman on Judgments (2d Ed.) § 141.

"If the judgment or decree is silent upon the subject of service of summons and the service shown by the return upon the summons is not such as will give the Court jurisdiction, no doubt the judgment is void." Freeman on Judgments, § 133.

If the decrees are void and the parties not served, that is a fatal defect without proof. If it is a voidable judgment and a hidden infirmity which can only appear by proof, in the latter case the infirmity cannot be shown in a collateral manner, but only a direct proceeding instituted for that purpose. *Turner v. Malone,* 24 S. C., 404.

The contention of the appellants here is that the record does not show they were parties; that by reason of that the judgment is void; that it is not a voidable judgment, but a void judgment. In *Finley v. Robertson,* 17 S. C. 438 the minors accepted service. Judge Hudson held that could not be done, and says:

"The record of this inferior Court fails to show the law has been complied with in that action, either in making the infants parties, or in the appointmennt of guardian ad litem; on the contrary, it shows proper steps not taken."

In that case Judge Hudson sustained the judgment as to the adults, and only avoided it as to the infants. Justice McGowan, in delivering the opinion of the Court, says:

"There was no proof offered that contradicted the record, and this case may also be considered as coming within the category of those where the mere exhibition of the record disclosed the fatal infirmity, and, to that extent, made the judgment void." 24 S. C. 406.

Justice Jones, in *Clark v. Neves,* 76 S. C. 484, 57 S. E. 614, 12 L. R. A. (N. S.) 298, says:

"When it appears affirmatively on the face of the record that an infant has not been served with summons, the infant is not bound by the proceedings· *Bailey v. Bailey,* 41 S. E. 337, 19 S. E. 669, 728, 44 Am. St. Rep. 713. If the record is silent as to such jurisdictional matters with respect to a Court of general jurisdiction, it will be presumed that what ought to have been done was done; but when the record discloses the manner in which service on the infants was attempted to be made, there is no presumption that they were served in any other way. *Rice v. Bamberg,* 59 S. C. 505," 38 S. E. 211.

The Cave will created a trust. By his will Cave gave the real estate to his executors in trust for his grandchildren, to be equally divided amongst them. The land in specie belonged to the life tenant and the remaindermen. He provided that, if partition was impracticable equally and fairly, the property should be sold and the proceeds invested in other real or personal property by the executors for the use of the life tenants and the remaindermen. This was a trust with implied powers, to be executed in a specific way by partition in kind, and, if that was impracticable, by sale,

and a specific declaration that the proceeds of the sale were to be reinvested.

Now, the respondent presents the decrees of Chancellors Johnstone and Inglis to the Court, and insists that these decrees show that the fee to the land in controversy went into John W. Bradley. The Johnstone decree put the land in dispute into John W. Bradley for life, in accordance with the terms and limitations of the will of Cave, and effectually completed what the executors were empowered to do. But the Inglis decree, a new proceeding, reverses the status entirely, and declares it invested in the life tenant, John W. Bradley, in fee simple, and does not require the executors, as required by the will in the trust created, to reinvest the proceeds, and takes from the remaindermen entirely their right to the land, and in no way orders a sale for the purpose of reinvestment. The trustees made no sale, although authorized to sell, but the decree simply put the fee in John W. Bradley without any words of inheritance. The decree of Chancellor Inglis did not direct a deed to be made, but simply put the fee in John W. Bradley. The effect of the Inglis decree destroys the purpose of the will of Cave, and, unless the appellants were before the Court when it was passed, by person, privies, or class, or some competent person to represent them, then what was done, as far as their rights are affected, is an absolutely void act. In *Dumas c. Carroll,* 112 S. C., 296, 99 S. E., 804, Mr. Justice Hydrick says:

"It has been held by this Court, in cases too numerous to mention, that the Courts have no power to make or modify deeds or wills made according to law· If the right, which is deemed by most people a very sacred one, of disposing of one's property as he may see fit, is to be preserved in this State, the Judges must resolutely set their face against a practice, which is said to be too common, of destroying trusts created by will or deed, or interfering with the testator's or grantor's disposition thereof by consent decrees,

especially where the rights and interests of infants or contingent remaindermen are affected. Where the parties are sui juris and their rights alone are affected, they may, of course, do as they please. But where the rights of infants or unborn remaindermen who are only constructively before the Court are to be affected, the Court should see to it that theirs are not injuriously affected. It is .the duty of the Courts to preserve and not destroy or allow the parties in interest to destroy or alter trusts and other dispositions of property, where the same have been made and created according to law; and violate no rule of law; otherwise the jus disponendi is of no value.

"It must not be understood that the Courts should exercise such power over trust estates, which is a well-recognized feature of equitable jurisdiction, as may be necessary to prevent them from going to waste, or to make necessary improvements for the maintenance of the beneficiaries, or to change investments, and the like. But even these powers are to be exercised with great caution, and generally so as to preserve rather than to destroy trusts and other dispositions of property."

In *Mauldin v. Mauldin,* 101 S. C. 1, 85 S. E. 60, a family settlement was agreed on to obviate a family litigation between the members of the family, some of whom were dissatisfied with some of the provisions of the will, and a consent decree was taken, carrying out the proposed settlement. This Court reversed the decree on the ground, among others, that it disturbed the testator's disposition of his property, which cannot be done without cogent reason therefor. Again, in *Cagle v. Schaefer et al.,* 115 S. C., 89; 104 S. E. 321, it is held:

"A guardian ad litem is bound to look after the infant's interest and to act for him in all matters relating to the suit as the infant might act if of capacity; and the mere filing of a formal answer submitting the infant's rights to the protection of the Court is not a sufficient compliance with

the guardian's duty. * * * Where a Court of equity has before it all the parties in interest who are in esse, it may for protection of an estate order the sale of lands, which are subject to remainders, etc., and a possible trust, but the power cannot be exercised save in case of a reasonable necessity."

All persons in esse who have any special interest in the subject-matter, without reference to what may be the precise character of that interest, should be made parties. So in the present case these appellants, as remaindermen, under their great-grandfather's will, should have been made parties to any suit that affected their special interests.

The law provides for the manner in which all records in judgment rolls are to be kept, and we have both criminal and civil statutes providing a penalty for any officer allowing them to go out of his possession. The violations of these wise statutes by the officers and attorneys are to be deplored.

As we have said before, the records or parts of them produced and where they come from should be admitted in evidence for what they are worth, but the question should have been submitted to the jury as to whether or not these appellants' rights had been adjudicated by the Johnstone and Inglis decrees, or whether, notwithstanding these decrees, they are to be entitled to assert their rights as remaindermen, under the will of William Cave and recover. All presumptions one way or the other should be solved by a jury, under proper instructions of law, by the Court.

The exceptions raising the questions passed on are sustained. Exception 5 is sustained for the reason that, if John W. Bradley only had a life estate in the land, nothing else was sold, and his widow only purchased and acquired such title as he had. If it should turn out the fee was in him, then she purchased that, but there is testimony in the case that John W. Bradley frequently asserted that he had only a life estate, and that his widow

knew that, and should be charged with that notice when she purchased at Probate Court's sale. In *Sullivan v. Latimer* it is held, 35 S. C., 422; 14 S. E., 933.

"Where one purchases * * * land sold as the absolute estate of A, knowing at the time that A held it only as a trustee for his sister and her children, the purchaser takes the land subject to the trust, and becomes himself the trustee, and cannot, while retaining possession, acquire title by prescription, or hold it under the statute of limitations, without clear proof of adverse possession. The mere retention of possession of land, subject to a trust. is not adverse to the cestuis que trust, nor are they barred by laches from asserting their rights because of their nonaction for the space of 20 years."

All questions of ouster, adverse possession, the minorities of the appellants, affecting the different periods of possession, whether of adverse possession, statute of limitations, or presumptions of grant, are disputed questions, and should be submitted to the jury.

The record in the Probate Court does not show that the title was adjudicated other than such title as John W. Bradley had in the land ordered sold, and it was not an adjudication against the appellants.

Judgment reversed, and a new trial granted.

Mr. Chief Justice Gary and Mr. Justice Fraser concur.

Mr. Justice Cothran (dissenting:) I dissent from the judgment in this case and will endeavor to make clear my reasons therefor.

I fully concur in the conclusion that the plea of res adjudicata under the alleged equity record of 1861 cannot be sustained, for the reason that it does not appear affirmatively as it should that the Bradley remaindermen were parties to that proceeding. I think that for that reason the record should have been excluded. It is not only useless, but im-

proper, to submit to a jury evidence the admissibility and efficacy of which depends upon an issue of law, which the Circuit Judge sooner or later in the trial must decide.

The decree of Chancellor Johnstone in the partition proceeding of *Robert Bradley et al. v Marion Cave et al.*, dated February 12, 1856, distinctly adjudges that the 153-acre tract, the subject of this litigation, be allotted to John W. Bradley, subject to the limitations contained in the will of William Cave.

Both of these equity proceedings may therefore be eliminated from the case.

My difficulty in concurring arises from my conception of the effect of the proceedings in the Probate Court under which this land was sold in aid of assets to pay debts.

The probate proceedings: It is conceded, and may well be, that under the will of William Cave, after the real estate had been partitioned and a portion allotted to John W. Bradley, the 153 acres so alloted, the subject of this litigation vested in John W. Bradley for life, with remainder at his death to such child or children as he might leave living at the time of his death. This partition took place in 1856, William Cave having died in 1855, and John W. Bradley went into possession of the 153-acre tract, as tenant for life, so recognized his tenure, and continued in possession until his death in 1875. He left surviving him seven children by his first wife, Wm. H. (26,) Elizabeth (24,) Martha (22,) J. R. (18,) B. F. (17,) Caroline (14,) Mary (10,) and one by his second wife, the defendant, Belle B. Calhoun, (4,) and a widow, Julia R. Bradley. It will be noted that at the instant of his death the title vested in the children above named in fee.

In 1877 William H. Bradley, the oldest son and the administrator of the estate of John W. Bradley, instituted an action in the Court of Probate for Barnwell County for the sale of the real estate of John W. Bradley, in aid of the per-

sonal property to pay debts. The above-named heirs at law of John W. Bradley were made parties. The "case" states that they were all properly served. At that time three of the children were of age, Wm. H. (28,) Elizabeth (26,) and Martha (24.) The others, J. R. (20,) B. F. (19,) Caroline (16,) Mary (12,) and Belle (6,) appeared in said action by guardian at litem, who answered denying knowledge of the matters set forth in the complaint, claiming such interest in the premises as they might be entitled to, and submitting their rights and interests to the protection of the Court. The complaint alleged that at the time of his death John W. Bradley was "seized in fee simple" of the 153-acre tract, describing it. It does not appear that there were any answers filed or served by any of the parties except the minor defendants by guardian ad litem. On March 20, 1877, the Probate Judge granted a decree of sale. Thereafter, and before sale, the widow claimed and was assigned as dower 33 acres of the 153 being surveyed and allotted to her under regular proceedings, which were duly confirmed on November 10, 1877. The sale was ordered for December 3, 1877; the dower of Mrs· Bradley, life estate in 33 acres allotted to her, being excepted by the order of the sale. The sale was duly advertised and had on Decembber 3, 1887, at which the property was bid off by Mrs. Bradley at $115. She complied with the terms of the sale, and on December 4, 1877, received from the Probate Judge a conveyance of said premises, duly recorded on December 31, 1877, a fee-simple title. It appears that she continued in possession of the property, some of the stepchildren and her own child living with her for a while and at various times, until her death in 1910, after which the defendant, Mrs. Calhoun, appears to have been in possession, claiming this property as sole heir at law of her mother and through the deed of the Probate Judge. There is some testimony to the effect that John W. Bradley frequently recognized the interests of the remaindermen; that Mrs· Bradley knew of

this, and after the deed of the Probate Judge to her did the same thing; and that her possession was by the sufferance of the remaindermen who acquiesced in the arrangement of a home for her as long as she lived.

There are two very important questions which arise in connection with the foregoing statement:

(1) What was the effect upon the rights of the remaindermen of the proceedings in the Probate Court?

(2) If those proceedings did not conclude the rights of the remaindermen, should the question of the title of Mrs. Bradley by adverse possession, statute of limitations, and presumption of a grant have been submitted to the jury?

It is clear that, if those proceedings did conclude the rights of the remaindermen, the second question need not be considered; if they did not, the claim of the defendant that the mother had acquired the title by adverse possession, statute of limitations, or presumption of a grant would still be open for adjudication, unless it appears that there is no evidence at all to support it.

The first question: The Probate Court had unquestioned jurisdiction, under section 45 of the Code, to entertain the proceeding for the sale of the "real estate of such deceased person," in aid of the personal property, to pay the debts of the deceased. The pleadings appear to have been in proper shape, and "all persons interested in such estate," including the widow and the children named above, were duly subjected to the jurisdiction of the Court by the service of summons. The minor defendants were represented by a guardian ad litem, duly appointed, who filed an answer in their behalf, formally confiding their interests to the protection of the Court. The decree of the Probate Court was duly promulgated, directing a sale of the real estate, described in the complaint as the property in fee simple of the intestate at the time of his death. The sale was duly advertised and consummated. The widow bought the land, paid the purchase price, and received a conveyance

therefor · from the Probate Judge of the fee-simple title to the property excepting her dower interest, a life estate in 33 acres, and had the deed recorded. Every legal step necessary appears to have been regularly taken to transfer to the purchaser every interest which the intestate had in the tract of land.

The remaindermen, however, contend that John W. Bradley, the intestate, had only a life interest in the land. and that, although they were parties to the proceeding, they are not now estopped, by the adjudication therein, from setting up their claim to the fee-simple title to said land.

That presents a very interesting question, to which I have given my most earnest consideration, realizing the far-reaching effect of this decision upon titles depending upon such proceedings as this in the Probate .Court.

There is much in this case of a sentimental nature calculated to affect the judgment of a Court in its interpretation of the cold principles of the law. The Court is naturally reluctant, if it can possibly be avoided consistent with the settled principles, to sanction the destruction of the rights of the remaindermen, certainly vested upon the death of the life tenant, by a proceeding blunderingly consummated in violation of these rights. For fear that such considerations might affect my judgment, I shall first discuss the effect of the Probate Court proceedings as if an entire stranger had become the purchaser of the land for a full price.

It is of the utmost importance that the faith of the people in the efficacy of titles under judicial sales shall not be shaken. The Courts owe it to themselves as the guardians of the law that this shall not lightly be. It is of greater moment than relief from an isolated instance of hardship.

If it be the law that the Probate Court has no power to do anything but sell the interest of the intestate in the real estate described in the petition, that it has no power to entertain an issue of title affecting that real estate, and that

those who come and who are brought into that Court alleging  and admitting title in the intestate may afterwards repudiate the adjudication and recover upon their own title, we may have this instance presented:  John Doe owns a life estate only in a tract of land.  He dies owing debts which his personal assets are insufficient to pay.  He leaves a widow and children all of age.  One of his sons is appointed administrator of his estate.  He brings an action in the Probate Court for the sale of the land, alleging that his father owned the fee-simple title thereto.  The widow and the chlidren are made parties defendant.  They answer, admitting all of the allegations of the petition, including the allegation that the father owned the land in fee simple and join in the prayer of the petition.  The decree of sale is made.  The sale is had, and Richard Roe purchases for a full price, pays his money, takes his deed, and records it. The proceeds of sale are applied to the debts of the intestate. The children who were in fact the remaindermen of the estate after the falling in of the life estate ɔf the father come into Court, repudiate their answers, repudiate the solemn adjudication of the Court, repudiate its conveyance, claim that the Court only sold the interest of the life tenant, which of course at his death was nothing, and recover the land from the innocent purchaser, for value, who relied upon their solemn admission and the judgment of a lawful Court.

So far as the validity of the Probate Court decree is concerned, it does not make a particle of difference that there was no answer filed by the adult defendants, or that five of them were minors answering by guardian ad litem.  They were all served, properly before the Court, and its judgment in the matter confided to it was the solemn act of the law, if within the purview of its jurisdiction.

That the Probate Court had jurisdiction to try in the first instance the issue of title which might have been raisd, is conclusively shown by the case of *Gregory v. Rhoden,* 24

S. C. 90. There the Court says (construing the very section of the Code which gives the power of sale) :

"It seems to us that in such cases this provision necessarily gives the right to determine, at least in the first instance, what is 'the real estate of such person deceased,' subject, of course, to the right of appeal to the Court of Common Pleas, where a trial by jury may, if desired, be demanded. Any other construction would tend to make the whole jurisdiction nugatory."

The case of *Faust v. Bailey,* 5 Rich. 107, involved the question here presented. Although it was an action for partition in the old Court of Ordinary, the disposition of the question is interesting and fairly apposite to this discussion. It was there held that where one of the parties to the action claims adverse title in himself, the ordinary had jurisdiction to decide the issue of title. It was contended that the Court of Ordinary did not possess either one jurisdiction or the machinery to try the issue, but the Court held otherwise, that it was the duty of the Court of Ordinary, in the first instance, to decide that as well as all other issues in the case; that the right of trial by jury upon the issue of the title was preserved by appeal to the Court of Common Pleas where it could be demanded. The Court reaffirms the decision in the case of *Gates v. Irick,* 2 Rich. 593, where it was held that, where one of the parties in partition claims the exclusive title to the property, "the ordinary must decide upon the title." "He is considered to be competent to decide all questions of law and fact which, in the cases within his jurisdiction, are involved in the main inquiries: Shall partition be made between these parties? How? And in what proportion? The title to land is necessarily involved in every such case, whether the decision be made upon default or after contest had." The Court further held that the right of trial by jury upon the issue of title was preserved by appeal.

The appellant contends that the case of *McLaurin v. Rion,* 24 S. C. 407, is conclusive of the position assumed by them

that the sale carried only the interest of John W. Bradley, which was nothing, and that they are not bound by the adjudication of their title. That case is complicated and abounds with differentiating circumstances. It appears to me that the intimation of the Court (it is not a decision to that effect) that, if the Probate Court had ordered the land sold as the property of one person, where certain of the parties before him were claiming it as the property of another, the sale would have carried only the interest of the first person, and that the adverse interests would not have been concluded, is based upon the assumption that the proceeding was one in rem, and that no parties were necessary; an assumption which is directly opposed to the section of the Code and to the case of *Gregory v. Rhoden,* in the same volume, p. 90, in which the opinion was written by the same learned Judge. If the case requires interested parties to be before the Court and the foregoing decisions justify the conclusion that the Probate Court was authorized to entertain the issue of title. and if the decisions to be cited hold that, if the adverse interests are not set up, they are waived, it is difficult to see how the proceeding can be considered one in rem. 23 Cyc. 1406.

I am convinced by the foregoing authorities that the Probate Court had the authority to try the issue of title between the estate of John W. Bradley and the appellants, who were parties to that action, that it was their duty to set up their title in that proceeding, that an adjudication of sale was an adjudication of title in John W. Bradley, and will endeavor to show that by not setting it up they are now estopped from claiming it.

I may say at the outset of this discussion that, while most heartily approving the declaration of this Court cited in the opinion prepared by Justice Watts, in reference to the duties of a guardian ad litem, particularly in the Schaefer Case, I do not think they are pertinent to the main question under discussion, for the reason that, whatever may have

been the delinquencies of the guardian ad litem in the probate proceedings, they cannot be inquired into in a collateral attack upon the judgment rendered therein.

We have here the possession by Mrs. Bradley of the land from 1877 to 1910, 33 years; a deed from the Probate Judge to her of the fee-simple title, duly recorded in 1877; a sale by the proper officer after due advertisement; a decree of a Court having jurisdiction of the subject-matter; all the persons interested in the estate parties to the action duly served, and guardian ad litem appointed and answering; a complaint alleging ownership in fee simple by the intestate.

We next have an action commenced in 1918, 41 years after the sale and 8 years after the death of Mrs. Bradley, by the persons who were parties to the probate proceeding, claiming that John W. Bradley did not own the fee-simple title and that it is in them.

The main question is: "Are they bound by the adjudication in the probate proceedings?"

In *Ruff v. Doty,* 26 S. C. 173, 1 S. E. 707, 4 Am. St. Rep. 709, the Court quotes with approval the following from *Freeman on Judgments*—

"An adjudication is final and conclusive, not only as to the matter actually determined, but as to any matter which the parties might have litigated, and had decided as incident to or essentially connected with the subject matter of the litigation, and every matter coming within the legitimate province of the original action, both of claim and defense."

—approved in *Ryan v. Association,* 50 S. C. 185; 27 S. E. 618, 62 Am. St. Rep. 831. See also, 23 Cyc. 1295; Mc-*Dowell v. McDowell,* Bailey, Eq. 324; *Kenner v. Caldwell,* Bailey, Eq. 149, 21 Am. Dec. 538; *Faust v. Faust,* 31 S. C. 576, 10 S. E. 262.

We have seen by the authorities above cited that the Probate Court had jurisdiction in the first instance to determine the question of title; that it was the duty of that

Court to do so should the issue bbe raised; that the question of the intestate's title was necessarily involved in the proceedings; and that it was the duty of the adverse claimants to set up their title in that proceeding.

In *Haddon v. Lenhardt,* 54 S. C. 88, 31 S. E. 883, the widow and children of the intestate had a homestead interest in his land.. An action was instituted in the Probate Court to. sell the land in aid of the personalty to pay debts. The widow and children were parties to that proceeding. A decree of sale was made and the sale had; the defendant became purchaser and received a conveyance from the Probate Judge. The widow and children then had their homestead laid off and brought suit to recover the land. The Court refused to allow a recovery, saying:

"We are unable to see why persons who are made parties to an action are not as fully concluded by a judgment the necessary effect of which is to destroy their right of homestead as they would be in any other case."

The precise point had been decided by the Court in *Culler v. Crim,* 52 S. C. 574, 30 S. E. 635, where the Court said:

"The order of the Probate.Court to sell the land in aid of assets was binding upon all who were made parties to that proceeding. The necessary effect of that order was to destroy the right of the parties to that proceeding to claim the homestead in the land ordered to be sold."

If the decree would be conclusive upon a right guaranteed by the Constitution, it is difficult to see why it would not be conclusive upon a title which accrued by virtue of a will. See the dissenting opinion of Chief Justice McIver in *McMaster v. Arthur,* 33 S. C. 512, 12 S. E. 308, where he announces the same principle, but felt bound by the case of *Ex parte Strobel,* 2 S. C. 309, which latter case is expressly overruled in *Hadden v. Lenhardt,* supra. See *Miller v. Sherry,* 2 Wall, 237, 17 L. Ed. 827.

In *Gates v. Irick,* 2 Rich. 593, it is held that, the ordinary having the power to decide the issue of the title raised by one of the parties in partition, his adjudication of sale is conclusive upon the party raising the issue, although the ordinary expressly declared in his decree that the rights of such adverse claimant should not be affected by the decree. The Court says:

"No stronger cause against a partition could be shown than an exclusive title in one of the persons summoned. If this, or any other sufficient cause which might have been shown, be neglected by a person summoned, where the applicant makes those circumstances appear which are essential to the jurisdiction of the ordinary, the rule is applicable to this which necessarily applies to all other judicial proceedings—matters which might have been investigated must be taken to have been adjudicated no less than those which were investigated."

In *Faust v. Bailey,* 5 Rich. 107, the above case is reaffirmed, the Court declaring:

"When called upon to show cause why partition should not be made, though it might be a suit involving his title to the land, yet, failing to make his defense at the proper time, such a judgment, I submit, would conclude him. * * * As a judgment between the parties upon the same subject-matter, if it did not constitute a bar to such a claim, everything appertaining to such titles may be regarded as unsettled and uncertain."

In *Smith v. Smith,* Rice, 232, the precise point was decided as in the two preceding cases. The Court declares:

"The defendant here, when served with the summons, had the opportunity of setting up his title and making his full defense. He was called upon to show cause why the partition should not be made of the premises, as the estate of Jesse Smith, deceased. It was a suit involving his title to the land, and he cannot be allowed to make now the defense which he omitted to make then. The order for the

sale is conclusive, as the judgment of a Court upon the same subject-matter and between the same parties."

In *Jefferies v. Allen,* 34 S. C. 189, 13 S. E. 365, the Court says:

"This 82-acre tract of land constituted a part of a tract which, in fact, belonged to Harriet Allen, and not to her husband; but inasmuch as she had assented to, or rather acquiesced in, an order of sale of this land as a part of the estate of her husband, and all of it except the 82 acres had been sold as such, it had been previously adjudged in these proceedings that Harriet Allen was estopped from claiming the said tract of land as her separate estate."

In *Bulow v. Witte,* 3 S. C. 308, the Court held:

"If we stretch the obligation of purchasers at judicial sales beyond the mere duty of ascertaining whether the Court had jurisdiction in the matter in which it claimed to act, and whether all the parties to be bound are before it, in the language of Lord Redesdale in *Bennett v. Hamill,* 2 S. & L. 577, 'we shall introduce doubt on sales under the authority of the Court, which would be highly mischievous.' Something is certainly due to the purchasers at these sales from the confidence which the public reposes in the judgments of the Courts of the country. They must be upheld, at least so far as they operate on the title of parties to the proceeding, and if the title, though of infants, is thus alienated by the sale, the conveyance of the officers of the Court operates as an estoppel to the same extent, and in the same manner that the proper deed of an adult conveying his title would bar him from asserting it against the grantee."

—approved in *Trapier v. Waldo,* 16 S. C. 282.

In *Trapier v. Waldo,* 16 S. C. 276, it is held:

"It is well settled that a purchaser at a judicial sale is bound to make inquiry as to the jurisdiction of the Court

which ordered the sale, and whether all proper parties were before it, but beyond that he is in no way responsible for irregularities in the proceeding."

See, also, *Lyles v. Haskell*, 35 S. C. 391, 14 S. E. 829.

It would be remarkable that purchasers at probate sales only be required to investigate possible adverse claims by parties to the proceeding.

It follows inevitably that the remaindermen, having been properly made parties to the proceeding, and having failed to set up their adverse claim to the land, are bound by the decree ordering the land to be sold as the property in fee simple of John W. Bradley.

Notwithstanding the conclusion that the legal title to this property was in Mrs. Bradley, the important inquiry remains to be determined whether or not by her conduct she became the trustee of a constructive trust in the property for the benefit of the remaindermen.

The case of *Sullivan v. Latimer*, 35 S. C. 422, 14 S. E. 933, cited by Mr. Justice Watts, is clear upon the question, and it is possible that the remaindermen may upon trial of the equitable issues bring themselves within the principle of that case, as to which no opinion is expressed.

If they should be able to establish a constructive trust in the land, the defendant would be entitled to show in reply that the trust was dissipated by such unequivocal acts on the part of Mrs. Bradley, repudiating the trust as would give a starting point to adverse possession, the statute of limitations, or the presumption of a grant, which, if continued for a sufficient length of time and under the circumstances required by the law, would perfect her title.

It is to be regretted that the verdict upon the legal issue of title was not followed up by a decree settling the equitable issues as well, in which event this Court would have been in a position to determine the whole case and end the controversy. As it is, this appeal is not from any judg-

ment of the Court, but from a verdict upon the legal issue of title.

In my opinion the verdict upon the legal issue of title was rightly directed in favor of the defendant, and that the case should be remanded to the Circuit Court for the determination of the equitable issues in the case.