## EHRING MORTGAGE AND SECURITIES CO v DRUGGAN

Ohio Appeals, 2nd Dist, Franklin Co

No 2489.   Decided May 10, 1935

John E. Todd, Columbus, and Homer S. Bostwick, Columbus, for plaintiffs in error.

Charles S. Druggan, Columbus, and Paul R. Gingher, Columbus, for defendants in error.

**OPINION**

By HORNBECK, J.

It is claimed by the defendant that on the state of the pleadings the plaintiff was not entitled, upon its theory, to offer testimony tending to meet the case adduced by the defendant upon cross-examination of Mr. Ehring, because the defense of the plaintiff was that of fraud. We do not so interpret the defense asserted. It is true that it was based upon a scheme, but if it had been accomplished as contended by plaintiff it would have defrauded no one, but would have accomplished only the prompt payment by the debtor of an obligation which was owing to defendant. It did not have the elements of a fraudulent transaction such as would have required that it be affirmatively set up.

The trial court predicated its action upon two propositions: First, that there was a variance between the averment of the petition and the proof, in that the plaintiff alleged that the money was held by the defendant for and on behalf of the plaintiff, having come into the hands of the defendant in his capacity as attorney for the plaintiff; whereas the proof disclosed that the plaintiff, upon his own admission, had loaned the money to the defendant.

Upon this proposition the trial judge was in error. The averment of the petition touching the manner in which the money had come into the hands of the defendant was admitted by the answer. Therefore, there was no controversy or issue upon this question. If there were an issue, upon a fair consideration of all that Mr. Ehring said in his testimony it was not proper to draw the sole inference against plaintiff that the money was in the hands of the defendant as a loan. Granting that some of his testimony may have permitted this conclusion, other portions of his testimony were in accord with the claim in the petition. It was improper to ignore this latter testimony inasmuch as the plaintiff was entitled to the most favorable inference in its behalf from the evidence upon the motion for directed verdict.

The second proposition upon which the trial court directed the verdict was that from Mr. Ehring's own statements it became evident that plaintiff had no defense to the claim of the defendant that it through Ehring had purchased the note.

We are of opinion that the trial court erred in this determination. It should be borne in mind that the defendant offered no testimony whatsoever to substantiate his claim, save that which was elicited from Mr. Ehring on cross-examination. But for the statutory authority the defendant would have had no right to place Mr. Ehring upon the witness stand as upon cross-examination as a part of defendant's case. But for the statute the defendant would have been compelled to produce his testimony from sources other than Mr. Ehring, or to have placed him upon the stand as defendant's own witness. The interpretation placed upon the rights of the party who is under cross-examination under the statute is that at the time no direct examination is permitted of the witness by his counsel. Thus, when a witness is called under the statute for cross-examination and interrogated his testimony stands at that time upon cross-examination only, without any opportunity to explain or produce his countervailing evidence until his case is ready for presentation.

At the time that the court passed upon the testimony no opportunity whatever had been accorded to the plaintiff to introduce any evidence to meet the favorable testimony for the defendant, elicited upon cross examination.

Testing the action of the trial court we must give to the plaintiff the benefit of any evidence which he might have produced, the effect of which would have tended to dispel unfavorable inferences arising upon cross-examination, and further we must accord to the plaintiff's testimony on cross-examination the most favorable inference which it will bear in his behalf. If, upon these hypotheses, there could be a question for a jury, then the court erred in directing the verdict. Nor is it incumbent upon the plaintiff to tender proffer

of proof. His right to introduce his case to meet that produced by the defendant is statutory. The trial court was obliged to assume, first, that any explanation of the testimony of Mr. Ehring which would support the theory of plaintiff would be offered. The trial court likewise could not assume that plaintiff might not have corroboration of its theory of the case.

From the cross-examination it appears that, although Mr. Ehring admitted much of the contention as made by the defendant, admitted that he had represented in letters to the defendant that plaintiff was the owner of one-half interest in the Crater note and mortgage securing same, admitted that he had told Crater that plaintiff was the owner of the one-half interest in the note and mortgage, admitted that he had made statements and acted upon many occasions as though plaintiff were the owner of a share in the note, yet asserted that all of his statements and actions were but a part of a scheme to which he and the defendant were parties, by which Mr. Crater might be induced to pay to the defendant money owing him from Crater sooner than he otherwise would have paid and thereby relieve the defendant from the embarrassment of pressing Mr. Crater.

If the record as it comes to us represented the case after the plaintiff had been given full opportunity to be heard, even then we would have much difficulty in supporting the action of the trial court.

The case of **Pope v Mudge, 108 Ok St, 192,** is in point, the second proposition of the syllabus of which is:

"If, in ruling upon a motion to direct a verdict, the court is required to detect the truth from conflicting evidence of the same or different witnesses, the motion should be overruled."

This only has application in that it asserts a principle that if upon any view of testimony which could have been offered by the plaintiff, had it been permitted the opportunity to do so, there could have arisen a conflict in the evidence, then it was improper to deny it its day in court.

In Pope v Mudge, supra, the testimony of Pope was taken, the purpose of which was to support the claim of Pope that he had been caused to make a settlement of a personal injury suit, in which he was a plaintiff, by the fraudulent conduct of one Frank VanLill, representing the Maryland Casualty Company, and one Mudge, a party defendant. One of the elements which it was obligatory upon Pope to establish was

that false representations which had been made to him were by him relied upon. Pope's deposition was taken. He was confined to his bed at the time with a very serious illness. In response to a question Pope answered that he had not relied upon the false representations made to him by Mudge. Upon this answer, which standing alone established the fact that a material element of fraud was missing, the trial court directed a verdict for the defense. The Supreme Court in passing upon the question held that upon a fair consideration of the whole of the deposition, together with the physical condition of Pope, it became necessary to detect the truth from his own conflicting evidence and that the trial court erred in drawing but one inference from it.

In Cook v Morris (Conn.), 33 Atl. 994, we find facts which would bear analogy to those presented in the instant case if to be determined only by the testimony in this record. There the plaintiff claimed that a testator had promised to bequeath to the plaintiff the sum of $25,000.00 for certain services performed by the plaintiff for the testator in his lifetime in tutoring certain students, plaintiff being a law student. The amount prayed bore no substantial relation to the value of the services claimed to have been performed. Plaintiff undertook to support his case by reference to statements which had been made by the Dean of the law school in which the plaintiff was a student, which statements were expressly and categorically denied by the Dean. Practically every circumstance in the case indicated that the plaintiff's contention was not well made, although supported by his own testimony. The trial court on motion non-suited the plaintiff.

The court at page 997 said, after setting forth some of the unusual facts in the case:

"The taking place of the foregoing transactions are necessarily involved in the plaintiff's case. There are other matters incidentally involved scarcely less extraordinary. It would be folly to deny that this story so conflicts with the experience of human life and the acknowledged motives which govern human action as to make it highly improbable. It contains in itself a suggestion of incredibility. Yet it can not be said to be impossible in the same way that a conversation between two persons, unaided by the telephone, who are 15 miles apart, is impossible. We know that the laws which govern human actions are

subject to occasional . exceptions, which seem little short of miraculous.

"But the defendant claims that a story so highly improbable can not be regarded as substantial evidence, unless supported by testimony of the highest character, and becomes practically impossible when supported, as in this case, by witnesses whose reliability is questioned. This is true; but then we must be asked to take the case from the jury because the credibility of the witnesses is not sufficient to justify belief in' the story they tell; and this credibility of the witnesses is the very matter which the law says must be submitted to the jury. If the court could say it is legally impossible for this story to be true, however credible the witnesses who testify to it may be, there might then be no substantial evidence to go to the jury; but we can not say this, and a nonsuit cannot be granted because the court is satisfied that the witnesses are not credible. If this testimony had been submitted to the jury, and a verdict rendered for the plaintiff, the court, satisfied that the credibility of the witnesses had been so shaken upon their examination and cross-examination as to demonstrate that in believing such a story on such testimony the jury must have acted under some mistake or .prejudice, might not hesitate to set aside the verdict. But a motion for nonsuit can not be permitted to operate as a motion to set aside a verdict against evidence. * * * A nonsuit * * * is never a matter of right, and should rarely, if ever, be granted where there can be any doubt, unless the evidence of the plaintiff distinctly raises a question of law determinative of the plaintiff's right of action. Where the granting must depend in any appreciable degree upon the court's passing upon the credibility of witnesses, the nonsuit should not be granted."

In the instant case, although the claim of the plaintiff may seem fantastic and highly unreasonable, yet it is the position of Mr. Ehring that, though he said the things which he admits on his cross-examination and acted as he admitted on cross-examination, all that he said and did was merely a sham and a pretense and was not the truth, but that the situation was the result of an agreement between him and the defendant.

It seems to us that, granting that Mr. Ehring would have, on direct examination and defensively testified as indicated he would in some of his answers on cross-examination, there would have been a question for the jury whether or not what he then stated to the jury to be the fact was the truth respecting the transactions under consideration, or whether his statements and conduct as appearing in his letters and actions represented the truth.

Had the plaintiff been accorded the opportunity to present its case in chief in its most favorable light, it must be presumed that Ehring would have expressly denied the inferences which the defense drew from his cross-examination and would have, according to the brief of the plaintiff, supported its claim by evidence tending to show the improbability that Ehring would invest the money of the corporation in a note, the security of which was of little or no value and known by Ehring to be worthless. If evidence relating to the value of the security of the note in question had been forthcoming, it may be that it would have been adduced not only from Ehring, but also from other witnesses. If this had been the state of the record, upon the conclusion of the whole case, the jury then would have had nothing before it but the testimony which Ehring had given, either upon cross-examination and in chief and the further evidence which the plaintiff had produced in its own behalf. Clearly, it would have been possible to have drawn different and varying inferences from this testimony in its entirety. Such a state of the record would have required the submission of the case to the jury. whose province it was to determine any disputed questions of fact.

The difficulty in sustaining the action of the trial judge is that he foreclosed every avenue of defense which the plaintiff might have employed, had it been permitted to introduce its testimony. Much of the persuasive effect of the cross-examination of Mr. Ehring was the result of correspondence which had passed between Mr. Ehring and the defendant.

Let us suppose that the defendant, upon the presentation of its case, should, through Mr. Ehring, its president, produce letters from the defendant to Mr. Ehring, in which the defendant suggested the plan which Mr. Ehring insists was the true version of the correspondence. Would not such letters at least present probative evidence from which favorable inferences could be drawn in behalf of the plaintiff's theory of the case? Suppose that it would develop in the testimony on behalf of the plaintiff that not only was the security for the note in question inadequate and practically worthless, but that this was known to the plaintiff and defendant. Would this not at least require the case to be presented

to the jury? The letter which plaintiff sent to the defendant, in which he returned to the defendant the evidence of his part ownership of the note, is persuasive against plaintiff's contention. But it would not be controlling if it developed that what had gone on prior to the mailing of this letter clearly tended to show that the arrangement between Ehring and the defendant was as Ehring claimed.

The trial court evidently concluded that anything further Ehring might say or might produce could in no wise have the effect of countervailing that which he had admitted on cross-examination. The difficulty with this position is that it was merely the opinion of the trial judge, in which he was passing upon the credibility of the witness. The members of this court all have acted as trial judges and many times have been convinced that witnesses were lying, but this is insufficient to empower a judge to interpose his opinion of credibility where upon the whole record reasonable minds may differ as to credibility. Here the whole record was not made up when the court arrested the case from the jury.

We have discussed this case in aspects which are broader than the narrow question presented which, after all, is the effect of a complete denial to a party of the right to offer any testimony in its behalf. Such action is a denial of the constitutional right of due process of law, as announced by Daniel Webster in his argument in the Dartmouth College case, 4 Wheat. 518. and in an unbroken line of authorities. 8 O. Jur., 707, 12 C.J. 1225, 6 R.C.L. 450, Old Wayne Mut. L. Assn. v McDonough, 204 U. S. 8; Crapster v Taylor (Kan.), 87 Pac. 1138; Bradley v Calhoun (S.C.), 106 SE 843.

As said in Stewart v Palmer, 74 N. Y. 183:

"A hearing or an opportunity to be heard, is absolutely essential. We can not conceive of due process of law without this."

We are of opinion, after full and careful consideration of this record, notwithstanding the weakness therein found respecting plaintiff's case and the strength of Ehring's testimony in behalf of the defendant, that it was prejudicially erroneous for the trial court to deny the plaintiff his day in court.

The judgment of the trial court will be reversed and cause remanded for further proceedings according to law.

BARNES, PJ, concurs.